CLARK, C. J., dissenting.
The defendant, H. B. Johnson, was tried and convicted under an indictment charging him with having in his possession and transporting spirituous liquors in violation of law; and the automobile, used by the defendant for transporting same, was sought to be condemned and forfeited as provided by statute. After the defendant had been tried and convicted, J. H. Creasman intervened and claimed title to the automobile. Upon the hearing of this intervention, the court found the facts and entered the following judgment:
"This is a motion made by J. H. Creasman for the return to him of an automobile seized by the sheriff of Henderson County, for the violation of the liquor laws by the defendant, while the said car was in H. B. Johnson's actual possession.
"At the request of the defendant, the court finds the facts in this case, which are as follows:
"1. The defendant, H. B. Johnson, at the present term of this court, was duly convicted by a jury for the unlawful transportation of spirituous liquor from Henderson County to the city of Asheville.
"2. That J.H. Creasman is engaged in the automobile public-service business, with his principal office at the Langren Hotel, in the city of Asheville, and was the owner of the Studebaker car seized by the sheriff of Henderson County, while in the possession of the defendant, H. B. Johnson.
"3. That on 24 February, 1921, the defendant, H.B. Johnson, was in the regular employ of said J.H. Creasman, acting in the capacity of chauffeur for said Creasman, and that said Creasman had in his employ approximately ten other chauffeurs at the time the car was seized. *Page 640 
"4. That on 24 February, 1921, T.B. Whitaker and Charles McCurry employed the defendant, H. B. Johnson, as Creasman's employee, to drive said car from Asheville to a certain place in Henderson County, and agreed to pay for the hire of said car at the rate of four dollars an hour for the trip to Henderson County and the return to Asheville.
"5. That said Creasman had no knowledge that the car was hired for the purpose of transporting liquor, and he had directed and instructed all his chauffeurs, including the defendant Johnson, not to carry persons in any of the automobiles operated by him who had whiskey in their possession or who were in any way using whiskey.
"6. That when the said automobile was seized by the sheriff, the defendant Johnson was operating said car for the benefit of said Creasman in the course of his employment and in furtherance of said Creasman's business, at the agreed price of four dollars an hour.
"7. That the sheriff of Henderson County took said car into his possession, as provided by sections 3403, 3404, and 3405 of the Consolidated Statutes, for a breach of the prohibition laws by the defendant, H.B. Johnson, and that four gallons of liquor were in said car at the time the car and liquor were seized by the sheriff, and defendant was transporting said liquor in violation of law.
"8. That said sheriff has kept said car in his possession from the date of its seizure until the present term of this court, and until the defendant was convicted of the unlawful transportation of liquor, and that said sheriff now has said car in his possession.
"Upon the foregoing facts the court is of the opinion that the said J.H. Creasman has forfeited and lost all right, title, and interest in and to said car; and it is ordered and adjudged that the sheriff of said county proceed to advertise and sell said car, under the laws governing the sale of personal proper under execution, and that the proceeds be applied as provided by law.
"This 11 March, 1921. W. J. ADAMS,
 Judge Presiding."
From this judgment the intervener appealed.
Section 3403 of the Consolidated Statutes, under which it is contended the intervener's automobile should be forfeited, in part provides: "If any person . . . shall have or keep in possession any spirituous, vinous, or malt liquors in violation of law, the sheriff or other officer . . . who shall seize such liquors . . . is hereby *Page 641 
authorized and required to seize and take into his custody any . . . automobile . . . used in conveying . . . such . . . liquors and safely keep the same until the guilt or innocence of the defendant has been determined upon his trial for the violation of any such law making it unlawful to so keep in possession any spirituous, vinous, or malt liquors, and upon conviction of a violation of the law, the defendant shall forfeit and lose all right, title, and interest in and to the property so seized."
It will be observed that, under the provisions of this statute, the automobile or property itself is not condemned and forfeited, but only theright, title, and interest of the defendant in and to the property so seized. The defendant, H. B. Johnson, had no right, title, or interest in the automobile, and the intervener, J.H. Creasman, was not a defendant or party to the proceeding. Hence, we think the owner's petition for a release of the property should have been granted.
The Federal law upon this subject, with respect to the question of forfeitures, is different from our State law in that under the National legislation the property itself, the res, and not merely the defendant's right, title, and interest therein is condemned and forfeited when the same is used by any one in the forbidden way. Bush v. United States, 24 Fed., 917; United States v. Mincy, 254 Fed., 287. Hence the Federal decisions, based upon statutes which authorize a seizure and condemnation of the property without regard to its ownership or management, afford no guide or rule of construction in interpreting our own laws. Indeed, we are well assured that no court of competent jurisdiction would be disposed to extend a penal statute, by implication or otherwise, to include a forfeiture beyond the clear import of its provisions. The case of Daniels v. Homer, in our own reports, 139 N.C. 219, fully recognizes this principle, and is in keeping with the authorities where the statute provides that the property, so used in offending, shall be seized and sold. This distinguishes it from the case at bar. "Forfeitures are not favored in the law. Courts always incline against them." Farmers Bank v. Dearing, 91 U.S. 29. In Southerland's Statutory Construction, 547, the rule is stated as follows: "If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed," citing numerous authorities in support of the text. To the same effect are our own decisions: McGloughan v. Mitchell, 126 N.C. 683; Coble v. Shoffner,75 N.C. 43; Smithwick v. Williams, 30 N.C. 268.
In answer to the contention of the State that the intervener should be held liable to the acts of his agent under the doctrine of qui facit peralium facit per se, or respondeat superior, it is sufficient to say, at least for the purposes of this appeal, that he has not been indicted or made a *Page 642 
party defendant; and we have found no provision in the statute by which a master may be punished for the acts of his servant without giving him an opportunity to be heard. The law provides that "the defendant shall forfeit and lose all right, title, and interest in and to the property so seized," and this is as far as the Legislature has gone. We can go no further. As said by Gray. C.J., in Ex parte Robinson. 131 Mass. 376: "It is hardly necessary to add that our duty is limited to declare the law as it is; and whether any change in that law would be wise or expedient is a question for the Legislature, and not for the judicial department of the Government." See, also, In re Applicants for License, 143 N.C. 1; S. v. Lewis,142 N.C. 626; and concurring opinion in Wilson v. Jordan, 124 N.C. 683.
The particular statute now under consideration was before the Court inSkinner v. Thomas, 171 N.C. 98, and we content ourselves by referring to that case as a controlling authority. Let judgment be entered directing the sheriff to return the property in question to the intervener.
Error.